IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DOUGLAS LEON FLATT<br><br>    Plaintiff,<br><br>vs.<br><br>(1) KEVIN CLARDY, in his official capacity as McCurtain County Sheriff,<br><br>(2) BOARD OF COUNTY COMMISSIONERS OF MCCURTAIN COUNTY, OKLAHOMA<br><br>(3) MIKE O'NEAL,<br><br>    Defendants. | Case No.:  24-CV-206-GLJ<br><br>ATTORNEY LIEN CLAIMED<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**COME NOW** the Plaintiff, Douglas Leon Flatt ("Plaintiff" or "Mr. Flatt") and for his Complaint against the Defendants alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Douglas Leon Flatt is, and was at all times relevant herein, a resident of McCurtain County, Oklahoma.

2.  Defendant Kevin Clardy ("Sheriff Clardy" or "Defendant Clardy") is and was at all times relevant hereto, the Sheriff of McCurtain County, Oklahoma, residing in McCurtain County, Oklahoma, acting under color of state law. Sheriff Clardy is sued in his personal his official capacity, as McCurtain County Sheriff.[1] As the McCurtain County Sheriff, Defendant Clardy

---

[1] It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs,* 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.,* 566 F. App'x 731, 737 (10th Cir. 2014). Thus,

1

was/is responsible for creating, adopting, approving, ratifying, supervising and enforcing the rules, regulations, policies, practices, procedures, and/or customs protecting citizens' individual rights and liberties that Plaintiff alleges were violated as set forth in this Complaint.

3. The Board of County Commissioners of McCurtain County, Oklahoma ("BOCC") is the chief administrative body for McCurtain County ("the County"), a political subdivision of the State of Oklahoma. The BOCC's principal place of business is located in the City of Idabel, the county of seat of McCurtain County, Oklahoma. The BOCC is obligated to conduct itself in a constitutional manner with respect to any action it takes and/or responsibility it discharges through the personnel of the McCurtain County Sheriff ("MCSO").

4. Defendant Mike O'Neal ("Deputy O'Neal" or "Defendant O'Neal") is a resident of McCurtain County, State of Oklahoma. O'Neal was, at all times relevant hereto, acting under color of state law, and in the scope of his employment as an employee and/or agent of the County/MCSO.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth Amendment and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

6. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983.

---

in suing Sheriff Clardy in his official capacity, Plaintiff has brought suit against McCurtain County/McCurtain County Sheriff's Office ("MCSO").

2

7. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy arising under the United State Constitution and federal law.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district

9. Prior to filing his Complaint, Plaintiff complied with the tort claim notice provisions of the Oklahoma Government Tort Claim Act ("GTCA"), 51 O.S. § 151, *et seq.*, by notifying the Office of the Creek County Clerk on September 19, 2023 of his intent to file State law claims in connection with the events and injuries described herein. Pursuant to 51 O.S. § 157, Plaintiff's claim was deemed denied on December 18, 2023. This action is timely brought pursuant to the Oklahoma Government Tort Claim Act

## FACTUAL ALLEGATIONS

10. Paragraphs 1 through 9are incorporated herein by reference.

11. On or about 11:00 a.m. on September 20, 2022, MCSO dispatch notified Deputy O'Neal that his presence was needed at Ringold Cafe, in McCurtain County, Oklahoma, for a welfare check on the Plaintiff.

12. Deputy O'Neal was told by dispatch that Plaintiff had threatened his mother and was threatening to harm himself.

13. Deputy O'Neal arrived at the Ringold Cafe at approximately 11:39 a.m. and spoke with the employee who was working at the front desk regarding the Plaintiff. The employee who Deputy O'Neal spoke to did not indicate that Plaintiff had threatened her, or anyone else at the store.

14. At approximately 11:33 a.m., Deputy O'Neal walked outside the store and made contact with Mr. Flatt, who was clearly in the middle of some sort of mental health episode.

15. Deputy O'Neal asked Plaintiff if there was anything he could do to help him. Plaintiff advised that he did not need any help and asked that Deputy O'Neal leave him alone.

16. Early in their encounter, Deputy O'Neal determined that he believed Plaintiff "was not in his right state of mind", was a danger "to himself or others," and therefore needed to be "taken into emergency custody."

17. However, despite making that determination, Deputy O'Neal never asked for backup or assistance in taking plaintiff into custody.

18. During the first seven (7) or eight (8) minutes of the encounter, Deputy O'Neal and Plaintiff stood outside the store, just feet apart from each other. During this conversation, Deputy O'Neal asked that Plaintiff put his hands behind his back so that he could place Plaintiff in handcuffs, because Plaintiff was "making him nervous.

19. While Plaintiff made it very clear that he did not want to be placed in handcuffs, he was not physically aggressive or threatening in any way.

20. At approximately 11:41 a.m., Plaintiff placed his hands on top of his head and looked off into the distance. With Plaintiff not paying attention, Deputy O'Neal aggressively lunged at Plaintiff in an attempt to restrain him.

21. When O'Neal was unable to get ahold of Plaintiff, he pulled out his department-issued baton and began striking the Plaintiff violently.

22. Plaintiff did not run or attempt to fight back but merely stepped away from O'Neal to avoid the painful strikes.

23. Approximately a minute later, after striking Plaintiff numerous times with his baton, Deputy O'Neal cornered Plaintiff against a nearby building and proceeded to strike Plaintiff over twenty-five times with his baton.

24. Eventually, O'Neal was able to get behind the Plaintiff and place him in a headlock.

25. While he had Plaintiff in a headlock at approximately 11:47 a.m., O'Neal got a call on his cell phone, at which time he finally called for backup.

26. From there, Deputy O'Neal took Plaintiff to the ground, where he was able to place him under arrest, with the help of a truck driver who happened to encounter Deputy O'Neal on top of Plaintiff.

27. Plaintiff was eventually transported to the McCurtain Memorial Hospital due to the lacerations that he had sustained from the force utilized by Deputy O'Neal.

28. After being released from the hospital, Plaintiff was taken to the McCurtain County Jail, where he was booked on charges of resisting arrest and assault and battery on a police officer.[2]

29. Deputy O'Neal's use of force on the Plaintiff constitutes excessive and unreasonable force in violation of the Plaintiff's clearly established constitutional rights.

30. There is an affirmative link between the aforementioned excessive force utilized by Deputy O'Neal and policies, practices and/or customs which the County/MCSO promulgated, created, implemented and/or possessed responsibility for. Those policies and practices, included, but are not limited to:

   a. A policy or custom of failing to de-escalate situations with civilians, which results in force being used sooner than necessary;

   b. A policy or custom of using more force, or a higher level of force, than is reasonably necessary during encounters with civilians;

---

[2] The assault and battery charge was dismissed by the State in the subsequent criminal proceeding. *See* McCurtain County Case No. CF-2022-155.

  c. A policy or custom of failing to accommodate the needs of mental health patients during a police-citizen encounter;

  d. A policy or custom of improperly training and supervising officers with respect to the use of force and de-escalation;

  e. A policy or custom of improperly training and supervising officers with respect to evaluating whether persons are or may be experiencing mental health issues;

  f. A policy or custom of unreasonable bias and discrimination against persons who are perceived to be experiencing mental health issues.

31. The County/MCSO was aware of these deficient policies, practices and/or customs through a number of prior instances, whereby MCSO employees utilized unnecessary force when attempting to take a suspect into custody.

32. For instance, on March 13, 2022, just six (6) months prior to Deputy O'Neal's use of force on Plaintiff, the MCSO utilized multiple force techniques on Bobby Barrick, who was similarly experiencing mental health issues at a local convenience store in McCurtain County.[3]

33. During the encounter with Mr. Barrick, a number of MCSO deputies: (a) kneeled on Barrick while he was handcuffed on the ground; (b) struck Barrick numerous times with a baton; and (3) tased Barrick at least four (4) times with an unregistered Taser. *See*, Complaint, *Barrick v. Clardy, et al.*, United States District Court Eastern District of Oklahoma Case No. CIV-23-129-GLJ, Dkt. #2.

34. While the MCSO deputies were on top of Barrick, he stopped breathing. Barrick was eventually life-flighted to a hospital in Paris, Texas, where he died. *Id*.

---

[3] See, Christa Swanson, *Complaint alleges McCurtain County deputies use of excessive force resulted in Bobby Barrick's death*, KFOR, https://kfor.com/news/local/complaint-alleges-mccurtain-county-deputies-use-of-excessive-force-resulted-in-bobby-barricks-death/

35. Upon information and belief, the County/MCSO did not address the clear inadequacies in how its deputies utilize force on citizens experiencing a mental health issue following the Barrick incident.

36. The County/MCSO, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; was deliberately indifferent to Plaintiff's clearly established constitutional rights

37. The County/MCSO knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MCSO personnel was probable,  but failed to take reasonable measure to alleviate the risks of harm.

## CAUSES OF ACTION

### CLAIM I - Excessive Use of Force in Violation of the Fourth Amendment
### 42 U.S.C. § 1983
### (Defendant O'Neal)

38. Paragraphs 1 through 37 are incorporated herein by reference.

39. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person and free form objectively unreasonable excessive force to injure him and his bodily integrity.

40. Any reasonable officer knew or should have known those rights at the time of the complained of conduct as they were clearly established at that time.

41. In the totality of the circumstances, Plaintiff was unarmed, not attempting to evade Deputy O'Neal by flight, and in no way posing any immediate threat to the safety of himself, law enforcement, or others .

42. Nevertheless, Defendant O'Neal intentionally and knowingly applied unnecessary, unreasonable, and excessive force against Plaintiff by striking him repeatedly with his baton, placing him in a headlock, and forcefully throwing him to the ground.

43. The use of violent force by Deputy O'Neal was excessive and objectively unreasonable

44. At the time of the use of force, Deputy O'Neal failed to utilize lesser means of force to de-escalate, reasonably communicate, and/or control the situation, despite Plaintiff's obvious disability and Deputy O'Neal having plenty of time and opportunity to do so.

45. Even if Deputy O'Neal was justified in stopping, detaining, or otherwise using some level of force during the encounter based on the ambiguity of the situation, the quantum of force used went far beyond that which could be considered reasonably justifiable under the circumstances.

46. Moreover, Deputy O'Neal's conduct caused or created a situation that necessitated an escalation in the need to use more force that what was necessary. *See Allen v. Muskogee, Okl*., 119 F.3d 837 (10th Cir. 1997) ("[t]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.").

47. Deputy O'Neal's use of force, as described herein, was also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights

48. As a direct and proximate result of O'Neal's unlawful conduct, Plaintiff suffered actual physical injures, mental and physical pain and suffering and other damages and losses as

described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

49. Plaintiff is entitled to punitive damages on his claims brought pursuant to 42 U.S.C. § 1983 as Defendant O'Neal's conduct, acts and omissions alleged here in constitute reckless or callous indifferences to Plaintiff's federally protected rights.

**CLAIM II - UNCONSTITUTIONAL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**
**(42 U.S.C. § 1983)**
**(*DEFENDANT O'NEAL*)**

50. Paragraphs 1-49 are incorporated herein by reference.

51. At the time of the complained events, Plaintiff, as a free person, had a clearly established Constitutional right under the Fourth and/or Fourteenth Amendments to be secure in her person and free from objectively unreasonable seizure.

52. On September 20, 2022, Deputy O'Neal, under color of State law and as an agent of the County/MCSO, made a warrantless and unreasonable arrest/seizure of Plaintiff in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States

53. Deputy O'Neal had no information suggesting that Plaintiff had committed, or was about to commit, a crime when Defendants detained and/or seized him.

54. Nonetheless, Deputy O'Neal forcefully detained and arrested Plaintiff and placed him in handcuffs, restricting his liberty, and took him to jail.

55. Additionally, Deputy O'Neal lacked sufficient probable cause upon which to seek the involuntary commitment of Plaintiff.

56. The seizure of Plaintiff was devoid of probable cause as required by the Fourth Amendment, as applied to the States by the Fourteenth Amendment. This wrongful seizure

violated Plaintiff's right to be secure against unreasonable seizure and violated his Fourth Amendment-protected sense of security and individual dignity.

57. Any reasonable officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

58. As a direct and proximate result of the actions of Deputy O'Neal, Plaintiff sustained damages, including but not limited to imprisonment, economic and personal losses, emotional distress, embarrassment, pain and suffering, and other damages.

### CLAIM III - MUNICIPAL/"MONELL" LIABILITY
### (42 U.S.C. § 1983)
### (*DEFENDANT KEVIN CLARDY*)

59. Paragraphs 1 through 58 are incorporated herein by reference.

60. There is an affirmative link between the aforementioned excessive force utilized by Deputy O'Neal and policies, practices and/or customs which the County/MCSO promulgated, created, implemented and/or possessed responsibility for.

61. There are unabated and long-standing practices, policies and/or customs of excessive force, failure to adequately train and failure to adequately supervise within the MCSO.

62. Such policies, practices, and/or customs include, but are not limited to:

   a. failing to de-escalate situations with civilians, which results in force being used sooner than necessary;

   b. using more force, or a higher level of force, than is reasonably necessary during encounters with civilians;

   c. failing to accommodate the needs of mental health patients during a police-citizen encounter.

63. Moreover, the County/MCSO had failed to train Deputy O'Neal regarding the constitutional limitations on the use of force. Evidence of insufficient training on the part of the

10

County/MCSO includes 1) Deputy O'Neal's assault on Plaintiff and 2) the fact that the use of force in this case arose under circumstances that constitute a usual and recurring situation with which officers must deal.

64. Moreover, the County/MCSO was on notice of the need for additional training through its involvement in the Bobby Barrick incident, which is described above.

65. The County/MCSO knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MCSO personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

66. The County/MCSO knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MCSO personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

67. Thus, the County/MCSO has created and tolerated and maintained long-standing, unconstitutional department-wide customs, law enforcement related policies, procedures and practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of force

68. The County/MCSO, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Plaintiff's, health and safety.

69. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Plaintiff suffered injuries, unnecessary physical pain, mental and physical pain and

11

suffering, humiliation, embarrassment, and other damages and losses as described herein.

**CLAIM IV - NEGLIGENCE**
**(51 O.S. § 151 *ET SEQ*)**
**(*DEFENDANTS KEVIN CLARDY AND BOCC*)**

70. Paragraphs 1 to 69 are incorporated herein by reference.

71. In Oklahoma, a law enforcement officer "is generally said to owe a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks that make the conduct unreasonably dangerous." *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't,* 230 P.3d 869, 878 (Okla. 2010). Because, however, the act of making an arrest necessarily involves some risk of harm to the arrestee, "a police officer has a special dispensation from the duty of ordinary care not to endanger others." *Id.* at 880.

72. In particular, "[a] police officer's duty … is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Id.*

73. Here, Deputy O'Neal owed a duty to Plaintiff to use only such force in securing his cooperation as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the incident.

74. Deputy O'Neal breached that duty by using objectively unreasonable and excessive force as described herein.

75. Sheriff Clardy and/or the BOCC are statutorily liable for the actions of their employees taken within the scope of their employment consistent with the provisions of the GTCA. *See Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914

76. At all pertinent times, Deputy O'Neal was acting within the scope of his employment and, thus, Clardy and/or the BOCC are vicariously liable for his negligent use of

excessive force pursuant to 51 O.S. § 151 *et seq*.

77. As a direct proximate result of Deputy O'Neal negligence, Plaintiff suffered actual physical injuries, mental and physical pain and suffering which ultimately lead to his death as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

SMOLEN | LAW, PLLC

*/s/ John W. Warren*
Donald E. Smolen, II, OBA #19944
John W. Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*