IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUGLAS LEON FLATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-CV-206-JFH-GLJ |
| | ) |
| SHERIFF OF MCCURTAIN | ) |
| COUNTY, in his official capacity, | ) |
| MIKE O'NEAL, | ) |
| Defendants. | ) |

### ORDER

Before the Court is Defendant Mike O'Neal's Motion to Compel and Brief in Support [Docket No. 75]. This action arises out of a claim for excessive use of force, municipal "*Monell*"[1] liability, and negligence. On September 16, 2024, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 23]. For the reasons stated below, Defendant Mike O'Neal's Motion to Compel and Brief in Support [Docket No. 75] is GRANTED IN PART and DENIED IN PART.

### Background

Plaintiff filed his Complaint on June 17, 2024, *see* Docket No. 2, and his Amended Complaint on March 4, 2025, *see* Docket No. 66. Plaintiff alleges various claims arising out of his encounter with McCurtain County Deputy Sheriff Mike O'Neal on September 20, 2022. *See* Docket No. 66. Plaintiff alleges that O'Neal responded to a call during

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

which he was in the midst of a mental health crisis. *Id.*, ¶¶ 10-16. Plaintiff alleges that despite the obvious nature of his mental health crisis, O'Neal did not call for backup assistance from any trained mental health professionals and instead used excessive force, including hitting him with a baton and taking him to the ground, in effectuating taking Plaintiff into emergency custody. *Id.*, ¶¶ 18-49. As a result of O'Neal's actions, Plaintiff alleges he suffered actual physical injuries, mental and physical pain and suffering and other damages and losses. *Id.*, ¶¶ 85, 95 & 103.

In discovery, O'Neal seeks to obtain information regarding Plaintiff's past medical and mental health treatment. Specifically, in Interrogatory No. 11, O'Neal seeks the identity of all medical and mental health care providers from whom Plaintiff had sought or received treatment from September 2011 to September 2021. *See* Docket No. 75, Ex. 3. In Interrogatory No. 15, O'Neal seeks the identification of all medications Plaintiff took from September 2012 to the present. *Id*. In Document Requests Nos. 8 and 9, O'Neal seeks the production of all Plaintiff's medical and mental health records from September 2012 to the present. *Id*. Lastly, in Document Request No. 18, O'Neal seeks the execution of a medical authorization form attached thereto, although the form was not attached to the Motion to Compel. *Id*.

Although Plaintiff's response to the First Set of Discovery Requests to Plaintiff by Defendant Mike O'Neal were due by March 13, 2025, Plaintiff did not respond until April 18, 2025. *See* Docket No. 75, p.3. After not receiving responses by March 13, 2025, on April 1, 2025, O'Neal's counsel emailed Plaintiff's counsel. *Id*. On April 4, 2025, Plaintiff's counsel responded by acknowledging the failure to timely respond and

requesting a 2-week extension to respond to O'Neal's discovery requests, which was granted. *Id*., Ex. 5.

Plaintiff objected to Interrogatory No. 11 as oppressive, unduly burdensome and overbroad as to time because it was not limited to the medical treatment Plaintiff received due to the September 20, 2022 encounter and because Plaintiff's mental health treatment is not at issue in the case. *Id*., Ex. 7. Plaintiff Objected to Interrogatory No. 15 as oppressive, unduly burdensome and overbroad as to time, and seeking irrelevant information because any mental health treatment Plaintiff received prior to the incident has no bearing on any issues in the matter. *Id*. Plaintiff objected to Request for Production No. 8 as overly broad as to time and scope, and as irrelevant because he has not placed his mental health at issue in the case. *Id*. Plaintiff objected to Request for Production No. 9 as oppressive, unduly burdensome and overbroad as to time, and that any mental health treatment has no bearing on any issue in the case. *Id*. Lastly, Plaintiff objected to Request for Production No. 18 as seeking an unlimited medical authorization and instead provided a limited medical authorization. *Id*., Ex. 7 & Ex. 13.[2]

## Analysis

### I.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the

---

[2] The executed medical authorization is unclear in its effect because it appears to attempt to limit it to Plaintiff's "[h]ead and arms", but the necessary box to so limit the authorization is not checked. *Id*.

> amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26(b)(1) is broad, but it "is not without limits and the trial court is given wide discretion in balancing the needs and rights" of the parties. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation marks omitted). In other words, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *LoganTree LP v. Garmin International, Inc.*, 339 F.R.D. 171 110 Fed.R.Serv.3d 538 (D. Kan. (2021) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule] 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). But "when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id*.

**II.      Interrogatory Nos. 11 & 15**

Interrogatory Nos. 11 and 15 seek the name and address of each medical and/or mental health care provider from whom Plaintiff sought treatment from September 2011 to September 2021 and the identification of all medications Plaintiff took from September 2012 to the present. *See* Docket No. 75, Ex. 3. Defendant O'Neal argues such information is relevant because Plaintiff put his mental health at issue in the Amended Complaint and alleges he suffered bruising and pain all over his body because of the incident. *Id.*, pp. 8 & 10.

Although not specifically raised by O'Neal, the Court must address the effect of Plaintiff's failure to timely respond to O'Neal's Interrogatories. As noted above, Plaintiff did not answer O'Neal's interrogatories when due on March 13, 2025. Rule 33 explicitly states: "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). *See also Morse Electric, Inc. v. Stearns, Conrad and Schmidt Consulting Engineers Inc.*, 2024 WL 5498909, at *3 (E.D. Okla. Dec. 23, 2024); *Logisys, Inc. v. Williams*, 2022 WL 3573209, at *2 (N.D. Okla. Aug. 19, 2022). Although Plaintiff requested and received an extension of time to answer the discovery requests from opposing counsel, such request did not come until nearly three weeks *after* the discovery responses were original due. Moreover, Plaintiff does not offer any cause or justification for its failure to respond or to state objections in a timely manner. Thus, Plaintiff's objections to Interrogatory Nos. 11 and 15 were waived and Plaintiff must answer the interrogatories.

### III.   Document Request No. 8, 9 & 18

Defendant also seeks an order compelling Plaintiff produce documents related to medical and mental health treatment responsive to document requests numbers 8 and 9. Unlike with his interrogatories, Plaintiff's failure to timely respond to the discovery requests does not waive his objections to documents requests. *See*, *e.g.*, *Logisys, Inc. v. Williams*, 2022 WL 3573209, at *2 ("Given this history [of Fed. R. Civ. P. 34], the lack of any waiver language in the rule, and the potentially extreme consequences of a waiver of all objections (potentially including privilege) to document production, the Court is more persuaded by the case law finding that Rule 34 does not include an automatic waiver of objections.").

O'Neal argues that document request numbers 8 and 9 seek discoverable and relevant documents because Plaintiff alleges he suffered physical injuries, and he placed his mental health at issue by alleging he suffered a mental health crisis at the time of the incident and he seeks damages for mental pain. Plaintiff argues his mental health and any prior treatment is irrelevant because his claim of excessive use of force turns on O'Neal's knowledge at the time of the incident, and whether Plaintiff was suffering a mental health crisis at the time has no bearing on whether the force used was objectively reasonable. *See* Docket No. 78, pp. 6-7. Plaintiff also argues his mental health records are protected by the psychotherapist-patient privilege under 12 O.S. § 2503(B) and his "garden variety" emotional damage claim does not waive such privilege. *Id.*, pp. 8-9. Lastly, Plaintiff argues the request for his medical records is overly broad because it seeks medical information not at issue. *Id.*, p. 11.

### A. Mental Health Records

Based on the Amended Complaint, information regarding Plaintiff's mental health treatment is relevant for discovery purposes. Plaintiff made his mental health history relevant for discovery purposes by claiming that he was having a mental health crisis at the time of the incident. Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See*, *e.g.*, *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001). "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) ("Under our rules, parties to civil litigation are given broad discovery privileges."). Plaintiff alleges throughout the Amended Complaint that he was having a mental health crisis at the time of the incident, O'Neal knew or should have known this to be the case and proceeded differently as a result, and that O'Neal was not provided proper guidance to handle such a situation . *See* Docket No . 66, ¶¶ 16, 18, 20, 23, 26-28, 53, 54, 61-65, 72, & 78.

While Plaintiff is correct that a key issue is whether O'Neal's use of force was objectively reasonable and prior mental health treatment is not a prerequisite for a mental episode on September 20, 2022, Plaintiff cannot have it both ways. Plaintiff clearly intends to put his mental state at the time of the incident into evidence and argue O'Neal should have identified it and acted differently as a result, yet simultaneously seeks to deny any discovery regarding the state of his mental, including prior treatment. Plaintiff's

reliance on *Crampton v. Morris*, 2023 WL 7553549, (E.D. Okla. Nov. 14, 2023) is misplaced. In *Crampton*, Defendant's reason for seeking mental and health records was highly speculative and tangential to the issues in the case. *Id*., at *1. Plaintiff put his mental health condition at issue, thus making his mental health records relevant. *See*, *e.g.*, *Carbajal v. Warner*, 2013 WL 1129429, at *4 (D. Colo. March 18, 2013).

Nonetheless, even if the mental health records are deemed relevant, they still may be protected from discovery by the psychotherapist-patient privilege. In *Jaffee v. Redmond*, the Supreme Court recognized a psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and [his or] her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 16 (1996). While the Court noted that as with "other testimonial privileges, the patient may of course waive the protection," it declined to specify the "full contours" of the privilege or to delineate under what conditions the privilege may be waived. *Id*. n. 14.

Plaintiff argues that his request for "garden variety" emotional distress damages is insufficient to waive the psychotherapist-patient privilege. O'Neal, noting the different approaches taken by courts, argues that Plaintiff waived this privilege under any of the three various approaches adopted by courts and that Plaintiff should not be permitted to use his mental health as both a sword and a shield.

Since *Jaffee*, federal courts have generally held that mental health records must be protected from discovery unless it can be demonstrated that the patient has no reasonable

expectation that the communications will remain private. *See*, *e.g.*, *Fisher v. Sw. Bell Tel. Co.*, 361 Fed. Appx. 974, 978 (10th Cir. 2010) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir.2000) ("Numerous courts since *Jaffee* have concluded that, similar to attorney-client privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue.") (collecting cases)). In *Michaels v. Youth Servs. For Oklahoma City, Inc.*, the court noted the three various approaches adopted by most courts for ascertaining whether the privilege has been waived, which include: 1) the "narrow" approach, in which "a patient only waives the privilege by putting the substance of the advice or communication with their psychotherapist directly at issue in the suit"; 2) the "broad" approach, in which "a plaintiff places [his] mental condition at issue and waives the privilege simply by making a claim for emotional distress damages"; and the "middle ground" approach, in which "a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, nor any specific psychiatric injury or disorder, nor unusually severe distress, that plaintiff has not placed his mental condition at issue to justify a waiver of the psychotherapist-patient privilege." 2019 WL 3225893, at *3 (W.D. Okla. July 17, 2019) (quoting *Castillo v. Villa*, 2016 WL 10592207, at *6 (D. N.M. Jan. 22, 2016). The "middle ground" approach is the approach adopted by a majority of courts. *Id*. Additionally, *Michaels* notes that "garden variety emotional distress" is defined as, *inter alia*: "[T]he distress that any *healthy, well-adjusted person* would likely feel as a result of being so victimized; . . . those that do not involve psychological treatment or adversely affect any particular life activities; . . . or those that involve the general pain

and suffering and emotional distress one feels at the time of the complained-of conduct, but not any ongoing emotional distress." *Id.*, at *4 (quoting *Castillo*, 2016 WL 10592207, at *7 (quoting *Flowers v. Owens*, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011)).

In this matter, although Plaintiff does not specifically plead any severe emotional distress as part of his claim, his claim does not fall into the definition of "garden variety" emotional distress. As noted above, "garden variety" emotional distress includes situations in which a "healthy, well-adjusted" person would feel such distress, someone not involved in psychological treatment or is not experiencing any ongoing emotional distress. *Id*. Plaintiff affirmatively alleges he was not in such a healthy or well-adjusted state at the time of the incident, but instead was having a mental health episode. As such, any mental health treatment Plaintiff was receiving prior to the incident relevant to any emotional distress claim Plaintiff is making. In effect, Plaintiff's prior mental health treatment is the equivalent of discovery regarding a preexisting condition. Thus, by alleging he was having a mental health crisis at the time of the incident and seeking emotional distress damages, the Court concludes that Plaintiff has made his mental health sufficiently at issue to waive the psychotherapist-patient privilege.

### B. Medical Health Records

As to health records, Plaintiff's claim for physical injuries is generalized and vague, and, therefore, he placed his prior health records at issue. Plaintiff generally alleges he suffered "substantial and serious injuries, including multiple lacerations and significant pain and bruising on his body," "actual physical injuries," "unnecessary physical pain,"

"physical pain," and "physical pain and suffering." [3] *See* Docket No. 66, ¶¶ 5285, 95 & 103. Because Plaintiff does not specify a particular type or location of his physical injuries or his pain and suffering, he made his general medical records relevant for purposes of discovery. *See Wiederstein v. Wal-Mart Stores, Inc.*, 2022 WL 19240838, at *1 (W.D. Okla. May 10, 2022) ("prior injuries or medical conditions that could cause the pain and suffering a plaintiff is claiming as a result of the accident at issue are relevant and discoverable") (citing *Fullbright v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 274131, at *2 (W.D. Okla. Jan. 15, 2010)). Thus, Plaintiff's medical records are discoverable.

### C. Time of the Discoverable Mental and Health Records

Although Plaintiff's mental and medical health records are discoverable, the relevance of such records dating back ten or more years is less clear. O'Neal does not specifically address or explain the relevance of the period in his requests. Instead, O'Neal's motion appears to modify the document requests, at least for medical records, from September 2016 rather than September 2012 to the present. *See* Docket No. 75, p. 10. Whether intentional or inadvertent, the Court agrees that September 2016 to the present is a reasonably relevant and proportional period for both mental and medical health records given the allegations in the case. Therefore, the Court concludes that medical and mental

---

[3] The Court assumes Plaintiff's allegation in his negligence claim that he suffered "actual physical injuries, mental and physical pain and suffering which ultimately lead to his death" is an unintentional misstatement as nowhere else does the Amended Complaint allege he died from the injuries he suffered. *See* Docket No. 66, ¶ 103.

health records under Request Nos. 8 and 9 are relevant, but only for the period from September 2016 to the present.

### D. Medical Release

Lastly, Request for Production No. 18 seeks the execution of a medical release. Because the proposed medical release was not attached to the Motion, the Court cannot evaluate it specifically. Based on the Court's findings, however, Plaintiff is ordered to execute a medical release consistent with this Order.

### Conclusion

Accordingly, Defendant Mike O'Neal's Motion to Compel and Brief in Support [Docket No. 75] is GRANTED IN PART and DENIED IN PART. Within 14 days of the entry of this Order, Plaintiff shall answer Interrogatory Nos. 11 and 15 in full, respond to Requests for Production Nos. 8 and 9 in accordance with this Order, and execute a medical release consistent with this Order.

IT IS SO ORDERED this 7th day of July 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**